#### OTTO v. HARRIS COUNTY et al.*
(No. 7296.)

(Court of Civil Appeals of Texas. Galveston. April 6, 1917. Rehearing Denied April 26, 1917.)

HIGHWAYS ⊜⟾113(3) — CONTRACT FOR ROAD WORK.

Where, under contract terminable by either party at any time, providing for services of plaintiff and team at $4 a day on Harris county roads, he to employ at $2 a day necessary laborers to aid him, plaintiff performed services in such work, and also in repairing a washout of a sewer or culvert, paid the laborers employed, and bought necessary material, his account therefor amounting to $352.40, he was not barred from recovering such account from the county, although it was apparent that the cost of repairing the sewer would exceed $50, by Harris County Road Law (Sp. Acts 33d Leg. c. 17) §§ 9, 10, requiring sealed proposals for the purchase of necessary tools, teams, wag-

ons, etc., where the contract is over $50, he not binding himself to complete any specified work, and his paying the laborers amounting to no more than a purchase of their claims.

[Ed. Note.—For other cases, see Highways, Cent. Dig. § 348.]

Appeal from Harris County Court; Clark C. Wren, Judge.

Action by H. B. Otto against Harris County and others. From judgment for defendants, plaintiff appeals. Reversed and rendered.

Stanley Thompson, of Houston, for appellant. Fisher, Campbell & Amerman, of Houston, for appellees.

PLEASANTS, C. J. This suit was brought by appellant against the county of Harris, the commissioners' court of said county, the county auditor, and W. H. Lloyd, one of the members of the commissioners' court, individually, to recover against said county the sum of $352.40, alleged to be due plaintiff for labor and the hire of teams furnished the county in repairing its public roads under a contract made for the county with plaintiff by the defendant Lloyd, and to compel the defendant auditor to approve plaintiff's claim for the amount stated. In the alternative, plaintiff prayed that, if it should be found that defendant Lloyd was not authorized by the commissioners' court of Harris county to make the contract sued on, plaintiff have judgment for the amount due him against the defendant Lloyd individually.

Defendants all answered by general demurrer, special exceptions, and general denial, and specially denying the authority of Lloyd to make the contract, pleading sections 5, 9, and 10 of the Harris County Road Law, alleging that said contract, being for more than $50, must be let out by bids, as required by said section 10 of said law.

The trial in the court below without a jury resulted in a judgment, in favor of all the defendants, that plaintiff take nothing by his suit. At the request of appellant the trial judge filed his conclusions of fact and law. These conclusions are as follows:

"On a date prior to the time the work in question was done, W. H. Lloyd, who was then commissioner of precinct No. 1 of Harris county, Tex., contracted and agreed with the plaintiff, H. B. Otto, to the effect that Otto was employed by Harris county, and his duties were to be superintending the unloading of shell for the repair and maintenance of about six miles of shell road in said precinct, and himself also to labor, and to furnish a team and wagon on the work of hauling and spreading the shell so unloaded in the repair and maintenance of said road; Otto being at the time authorized by Lloyd to employ, at a rate then fixed at $2 per day of eight hours work, with time and a half of overtime and holidays, the necessary men to do such unloading. It was then agreed that Harris county was to pay Otto the sum of $4 per day for the said services of himself and team for each day they worked. This agreement was for no definite time. It was understood that the county or Lloyd or Otto could terminate such employment at any time. At the time this agreement was entered into there was, at the place of the unloading, about 169 yards of shell to be unloaded from the cars, and it was understood that additional shell was to be sent down and was to be unloaded as needed. Otto went to work under this agreement, and furnished his team and wagon, and employed additional help for unloading the shell as needed. The help that Otto employed he himself paid at the rate prescribed. Otto borrowed the money necessary to pay this help from the bank, giving his personal notes therefor.

"Subsequent to the making of this agreement, and while Otto was so working, it was found that, at a place on the said roads, a sewer connecting the road had been undermined by a washout, and Lloyd asked Otto if he could fix it, and, when Otto replied that he could do so, Lloyd instructed him to hire such labor as was necessary and to go to work and fix this washout, it being then agreed that the rate to be paid for the labor so hired was the same as was fixed in the original agreement between Lloyd and Otto; the correcting of the washout requiring the removal of an old sewer and replacing it with a new one, also the excavation necessary for this work, and the filling in and repairing of the road. The labor of many men was required. Otto did his work of correcting the washout, employing for the purpose many men, and at the same time continued the work of unloading, hauling, and distributing shell on the balance of the roads. He paid out for labor which was employed at the prescribed rate, in addition to his own, in the fixing of this washout, the sum of $73, and for unloading shell $107.90, and in addition he paid out $6.65 for lumber which was used in said work. At the time the agreement was made between Otto and Lloyd for the fixing of this sewer it was apparent that the total cost of the work would be considerable more than $50, and the work of this repair and the material used therein was reasonably worth $187.55, this being the amount that was actually expended thereon by Otto. Under the agreement first made with Lloyd, Otto rendered his services and furnished the work of his team 40½ days, for which he has not been paid."

The court further found that other persons worked a total of 635 hours, at 25 cents per hour, and that Otto paid them $59 and more. The court further found as follows:

"After all this work was done and money paid out by Otto, he rendered itemized bills to the county covering said work, which bills were for the months of May and June, 1914, and appear on a form evidently in use at one time or another by the county, styled, to use the language in which they appear, 'Time and Pay Roll,' and these bills showed that the plaintiff, Otto, who was denominated therein as following the occupation of road repairer, and showed the names of the other persons above mentioned as following the occupation of 'unloading shell,' and others as following the occupation of 'work undermining road,' and purported to show the number of days and hours performed by each man, the amount due for such work, and there being also included in the bills thus presented an item of 'Bill of Lumber' for $6.65. The accounts thus presented to the county aggregated the sum of $352.40, of which $172.15 was the amount of the June account, and $180.25 of the May account. When presented these two amounts were certified as being correct by the plaintiff, Otto, and O. K. by Commissioner Lloyd. When these accounts were submitted to the county auditor he refused to approve them. Subsequent to this refusal the plaintiff, Otto, filed 14 different accounts against Harris county with the auditor, separating the same items as approved in his original accounts, so that each of the 14 bills presented were for less than $50. Six of these

appear to be for work unloading shell, one for work on Bay Ridge road, one for work on Morgan's Point road, and one for work on Sylvan Beach road, and one for work excavating on sewerage, one cleaning out ditch and filling excavation, and one for taking out sewerage and placing in 24' galvanized sewerage, and one for lumber bill.

"The auditor refused to approve any of the 14 accounts thus presented. The county commissioners' court passed an order and entered upon their minutes a motion or resolution in which it stated substantially that Otto had performed his services, and that the amount to which he was entitled therefor was $352.40, and used the following words: 'Now, therefore, the commissioners' court of Harris county, in so far as they are authorized so to do, do hereby approve the said account of the said H. B. Otto for the aforesaid sum.' The auditor still refused to pay said account, and Otto filed this suit to compel the auditor to audit and approve the accounts and the county to pay them. The auditor of Harris county contends, that Lloyd was not authorized to make the agreements aforesaid, and that the commissioners' court was not authorized to make said agreements or to ratify them. No proposals of any kind were ever asked for nor received by the commissioners' court concerning this work."

The court's conclusions of law were as follows:

"Under the facts above found, the agreements made by Lloyd and Otto, considered either together or separate, were a contract exceeding $50 in value, within the meaning of section 10 of the Harris county road law, which provides: 'Where * * * the contract sought to be made shall exceed $50 and shall not exceed $500, * * * sealed proposals without advertisement shall be asked from as many as three persons * * * based upon written orders or specifications, * * * and * * * the contract accepted with the lowest and best bidder.' The Legislature having laid down the method to be followed by the commissioners' court in making such agreements as these, this method is exclusive, and the agreements made, however provident, are void, and Otto can take no benefit from them nor the work he did under them. Since the commissioners' court could not itself have made such agreements, it being without power in law so to do, it cannot ratify the act of Lloyd in making them. No contract to pay on the part of Harris county or the commissioners' court could be implied from the facts that the county has received the benefit of the work, for the reason that the commissioners' court has no legal right to make the agreements, and cannot be bound by implication to do what they could not do directly."

Under approriate assignments of error, the appellant assails the conclusion of law of the trial court that the commissioners' court of Harris county was without authority to make the contract with plaintiff upon which this suit is brought without advertising for bids therefor as provided in the Harris County Road Law, and that, such contract being illegal, plaintiff is not entitled to recover thereon.

These assignments must be sustained. The provisions of the law upon which the holding of the trial court is based are as follows:

"Sec. 9. Subject to the provisions of this act, the commissioners' court shall have the right, and it shall be its duty, from time to time, to purchase any necessary tools, teams, wagons, machinery, material or supplies, and to employ any necessary men or teams, and to make, on behalf of the county, all necessary contracts to carry this act into effect: Provided, that in all purchases or contracts amounting to over five hundred ($500.00) dollars, bids shall be advertised for as now provided by law.

"Sec. 10. Where the tools, teams, machinery, supplies or other things sought to be purchased, or the contract sought to be made, shall exceed fifty ($50.00) dollars, and shall not exceed 'the sum of five hundred ($500.00) dollars, and shall not be necessary to advertise for bids, but sealed proposals without advertisement shall be asked from as many as three persons, firms or individuals, or as many more as offer to bid, based upon written orders or specifications, and same shall thereupon be opened by the court, if in session, or by the finance committee, if the court is not in session, and the purchase made, or the contract accepted, with the lowest and best bidder. The substance of each bid shall be tabulated by the clerk, and shall be recorded in the minutes of the next meeting thereafter. Copies of all specifications shall be filed with the county auditor at least forty-eight hours in advance of the letting.' Acts of 33d Legislature (Special Laws), p. 66.

We do not think these provisions of the statute have any application to the agreement under which plaintiff was employed and performed the services for which he seeks compensation in this suit. The trial court finds, and the undisputed evidence sustains the finding, that plaintiff made no contract to work for the county for any specified time. He agreed to work and furnish a team for the county in hauling and placing gravel on certain named public roads for the sum of $4 per day, and to employ for the county the necessary laborers to assist in the work, these laborers to be paid by the county the sum of $2 per day. The agreement to repair the culvert or sewer was made upon exactly the same terms. It may be conceded, as found by the trial court, that it was apparent at the time the work began that the total cost of repairing the sewer would exceed $50; but plaintiff did not bind himself to complete the work, and the services performed by him in this work were performed under the original agreement to work and furnish a team for $4 a day, which contract, as found by the court, could be terminated by either party at any time. The amount paid by plaintiff to the laborers employed by him for the county was, in effect, a purchase of the claims of the laborers who were hired by the day by plaintiff for the county at the wage agreed to be paid to them by the county, and it is, we think, clear that the payment of these wages by the plaintiff, and his right to recover the amount so paid, cannot be affected by the provisions of the statute above quoted.

Upon the fact findings of the court and the undisputed evidence, the plaintiff was entitled to judgment for the full amount claimed by him. It follows from this conclusion that the judgment of the trial court should be reversed, and judgment here rendered for appellant, and it has been so ordered.

Reversed and rendered.